EDWARD RIEFLE, APPELLANT, v. WILLIAM KAMP AND LESTER B. MEHRTENS, RESPONDENTS.—247 S.W. 2d 333.

St. Louis Court of Appeals. Opinion filed March 18, 1952.

1152

*Wm. J. Becker* for Appellant.

McKee & Rosenblum, Donald V. McKee, Stanley M. Rosenblum
for Respondents.

1154

GREEN, J.—This is an election contest for the office of City Councilman for the Second Ward of the City of Wellston, Missouri, growing out of an election held in said city on April 4, 1950. This was the first election to be held in said city and two councilmen were to be elected from the second ward, the candidate receiving the highest number of votes being elected for a two year term and the candidate receiving the next highest being elected for a one year term.

There were five candidates for the office: Alex Frank, Edward Riefle, Lester B. Mehrtens, William Kamp and Mrs. Harry Perkins. At the conclusion of the balloting the judges and clerks of the election certified to the City Clerk that the respective candidates had received votes as follows: Alex Frank, 89; Edward Riefle (contestant), 175; Lester B. Mehrtens (contestee), 175; William Kamp, 287; and Mrs. Harry Perkins, 114. Upon a canvass of these returns William Kamp was found to be elected to the office of Councilman for a two year term. It appearing that Riefle and Mehrtens had received 175 votes each the eleven members of the City Council who had been seated on April 5th undertook to determine the tie by resolution on April 12, 1950. By this resolution the tie was determined in favor of Lester B. Mehrtens, who thereupon claimed the right to hold and occupy said office for the one year period.

Thereafter, and in due time Edward Riefle instituted this proceeding as contestant. Lester B. Mehrtens and William Kamp were named as contestees, but as there is no controversy involving the right of Kamp to hold office reference will be made only to Mehrtens as contestee herein. An order of recount was issued by the Circuit Court of St. Louis County and under direction of that order a recount of the ballots was held on October 10, 1950. The result of the recount gave the contestant, Edward Riefle, 171 votes and the contestee, Lester B. Mehrtens, 172 votes, subject to the court's judicial determination as to the validity of ten (10) contested ballots which were not included in the count.

These ballots were offered in evidence as exhibits A to J, inclusive, and further identified by numbers from one to ten, inclusive. They are referred to herein by the numbers assigned to them in the trial court. The trial court found that contested ballots numbered 1, 4, 6 and 9 are void, that contested ballots numbered 2, 3, 5, 7, 8 and 10 are valid, that contestee, Mehrtens, received 175 votes, that contestant, Riefle, received 174 votes, and that contestee Mehrtens was duly elected Councilman from the second ward of the City of Wellston for the one year term. Contestant appealed, the appeal being first lodged in the Supreme Court, and by that court transferred to this court.

The right of the candidate to maintain a contest where the election resulted in a tie on the face of the returns, will first be considered. This point is briefed by contestant and since contestee does not refer to it it would seem that there is no serious contention about it. Section 124.250, R. S. 1949 provides the jurisdiction of election contests involving municipal offices. This section gives no indication of any intent to exclude tie votes from review by election contest. No such limiting provision is found at any place in the statutes dealing with the subject and the general wording does not permit of a construction that would deny a contest in the courts where there is a tie vote reported. Either candidate could maintain a contest in that event. 18

Am. Jur. p. 370, Elections Sec. 294; 47 L.R.A. 557; 17 Am. Cases 575; 29 C. J. S. Elections Sec. 263.

The result of the election and the final determination of this contest must rest upon the disposition of the ten ballots in question. Of these ballots those numbered 4 and 6 are clearly void as they pertain to this office. On Ballot No. 4 cross marks appear in the squares before the names of Alex Frank, Lester B. Mehrtens and Mrs. Harry Perkins. On ballot No. 6 cross marks appear in the squares before the names of Edward Riefle, Lester B. Mehrtens and Mrs. Harry Perkins. Only two were to be elected and the voter in marking his ballot for three failed to properly vote for anyone. These ballots should be rejected. R. S. Mo. 1949, Sec. 111.580.

Ballot No. 2 is regular in every respect and the only possible objection is that it did not have a black sticker over the number of the ballot on its back. The evidence indicated and justifies a finding that a black sticker was placed on the ballot covering the number, and after being placed with other ballots this sticker became loosened in some manner and remained loose among the ballots until they were opened for the recount. By this ballot contestant received a vote and William Kamp received a vote.

Section 111.620 R. S. Mo. 1949 contains the provision for placing a black sticker over the number of the ballot. This is to be done "In the presence of the voter, before any ballot is placed in the ballot box." In this instance it does not appear that this was not done. On the contrary it is indicated that the sticker was properly placed but for some unknown reason became loosened after deposit in the ballot box. The legislature did not declare a vote to be void where the ballot does not contain a sticker over the number. The statute directs the judges in the conduct of the election, but does not say that the ballot shall be rejected because of neglect of the judges in failing to place the sticker or in placing it in such insecure manner that it could become loosened. The omission of the election officials or the unaccounted for absence of a sticker should not deprive the voter of his right to have his ballot counted. Hehl v. Guion, 155 Mo. 76, 55 S.W. 1024. The reasoning in this case is applicable here. Gass v. Evans, 244 Mo. 329, 149 S. W. 628. The ballot is a valid vote and should be counted for the contestant.

Ballot No. 10 is challenged by contestee because of the manner in which it is marked. In the space provided for the names of candidates for councilman the voter made marks in only one square, the one before the name of contestant. Here, the voter appears to have made three marks. One begins at the left of the upper right corner and extends downward to the left and to a point immediately above the lower left corner. Another begins immediately below the upper right corner and extends downward to the left to a point to the right of the lower left corner. These two lines do not cross or touch each

other and are parallel for all purposes. They are very close together. The third line begins slightly to the right of the upper left corner, extends downward to the right across both of the other lines to a point adjacent and to the left of the lower right corner. This line and either of the others would make a very good cross mark or X.

Contestee contends that the extra cross mark invalidates the ballot, that the voter's intention is not clear, and that the extra cross mark is an attempt to obliterate or cancel the vote for contestant. In voting for assessor on this ballot the voter made marks resembling those made before contestant's name except that an additional cross mark was made, resulting in what appears to be two cross (X) marks, one superimposed on the other. At all other places marked on this ballot the voter made conventional single line cross marks. Contestee claims that this lack of uniformity indicates that the voter knew how to properly mark his ballot and intended to cancel or obliterate the cross mark in the two places mentioned. In examining this ballot it appears that the markings are not made generally with a firm hand. In at least five instances the line is not straight, extends irregularly outside the square and has uneven, unnecessary marks at the ends of the cross marks. All of these indicate that the voter was old, nervous, infirm or lacking absolute control for some other reason. The logical conclusion is that the voter was retracing the cross marks in these two instances in order that it might be more clearly seen. It may have been because of his poor eyesight or bad lighting conditions in the voting booth. This did not spoil the ballot and it should be counted as a vote for contestant. No Missouri case is cited directly dealing with this type of marking; however, our statute, R. S. Mo. 1949, Section 111.580 provides that "a cross (X) mark is any line crossing any other line at any angle within the voting space, and no ballot shall be declared void because a cross (X) mark therein is irregular in form." Other states have held that irregular markings made in an effort to retrace do not invalidate the ballot. Conley v. Hile, 207 Ind. 488, 193 N. E. 95; Parker v. Orr, 158 Ill. 609, 41 N. E. 1002, 30 L. R. A. 227; Hunt v. Campbell, 19 Ariz. 254, 169 P. 596; Greene v. Bjorseth, 350 Ill. 469, 183 N. E. 464.

Objection is made to ballots numbered 3, 5, 7 and 8 because of the marking used by the voter. On each ballot the voter used in the square before the voter's name a mark commonly referred to as a check mark. This might be described as a form of and resembling the letter V. On ballot No. 3 this mark is placed in the square before the name of contestee and in the square before the name of William Kamp. On ballot No. 5 it appears before the name of contestant only. On ballot No. 7 it appears before the names of contestee and Mrs. Harry Perkins. On ballot No. 8 it appears before the names of contestee and Mrs. Harry Perkins. On each ballot the mark is placed in the square before the name of one candidate for each of the other

officers appearing on the ticket. From this it will be observed that if these ballots are counted contestant will receive one vote and contestee three votes.

These ballots are objected to upon the ground that the marking is an identifying mark rendering the ballot void; also that the mark is not a cross (X) mark as provided by our statute and cannot be said to be a cross "irregular in form" or an effort to substantially comply with the direction of the statute. In settling these questions three objects must be kept in mind: 1, The intention of the voter. 2, The secrecy of the ballot; and 3, The requirements of the statute. If the voter's intention can be gathered from his ballot, without laying down a rule which may lead to a destruction of its secrecy, and the voter has substantially complied with the statute, his intention should be given effect. If a mark shows the voter's intent but at the same time serves the purpose of indicating who voted it, or if the voter has failed to substantially comply with the directions of the statute in making the voting mark, the ballot should be rejected. Gass v. Evans, 244 Mo. 329, 149 S. W. 628; Hope v. Flentge, 140 Mo. 390, 41 S. W. 1002; Lankford v. Gebhart, 130 Mo. 621, 32 S. W. 1127, 51 Am. St. Rep. 585; Parker v. Orr, supra; Appel v. Barcroft, 158 Ill. 649, 41 N. E. 1116; Greene v. Bjorseth, supra; Brents v. Smith, 250 Ill. 521, 95 N. E. 484; Vallier v. Brakke, 7 S. D. 343, 64 N. W. 180; Bowers v. Smith, 111 Mo. 45, 20 S. W. 101, 16 L. R. A. 754, 33 Am. St. Rep. 491.

Applying this rule to Ballots Numbered 3, 5, 7 and 8, can the intention of the voter be gathered from the ballot? There can be little contention about this. The marking was uniformly used throughout in the voter's attempt to express a choice as to each office. This mark, unless bad for other reasons was effective to reveal the voter's intent as truly as any mark that he might have made. This being determined, does the particular mark used serve the purpose of indicating who voted it? And does a negative answer establish a rule which may lead to a destruction of the secrecy of the ballot? These questions have been presented to the courts in instances ranging from the writing of the voter's name on the ballot to the making of a blot caused by folding the paper before the ink was dry. Some courts have held that any mark upon a ballot other than one appropriate and necessary under the law to designate the intention of the voter, must be regarded as a distinguishing mark and voids the ballot. Ellis, Atty. Gen. v. Blaser, 102 Mich. 405 61, N. W. 648. A very strict compliance with the statute is required in California and any mark not exactly as provided by statute is held to be an identifying mark and the ballot invalidated. An examination of the statutes in these states discloses statutory provisions that declare the ballot void when not marked in the designated manner.

The general rule appears to be that where the legislature declares

an irregularity to be fatal the courts will effectuate that command, otherwise they will ignore such innocent irregularities as are free from fraud. Whether a given marking is a distinguishing mark is largely a question of fact to be determined from inspection of the original ballot. Human frailties and habits, different instrument used in marking, and even the condition of the same pencil or other instrument from one marking to the other, make it impossible for all marks to be identical. Some distinguishing characteristic might well be pointed out on every ballot. If the mark appears, upon examination and with regard to other ballots, to have been made without intent to identify the ballot it should not be rejected for that reason. Gass v. Evans, supra; Lankford v. Gebhart, supra; Parker v. Orr, supra; Brents v. Smith, supra; Boland v. City of LaSalle, 370 Ill. 387, 19 N. E. (2) 177; Conley v. Hile, supra.

The intent of the voter to identify his ballot is regarded as an essential of a distinguishing mark. 29 C. J. S. 272, Elections Sec. 187. In determining what is a distinguishing mark the statute should be liberally construed in favor of the voter and should not be literally construed. Conley v. Hile, supra; Hunt v. Campbell, supra; Bowers v. Smith, supra. Where the provision of the statute is the very essence of the thing which it requires to be done it is mandatory and failure to comply voids the ballot but not otherwise. Hope v. Flentge, supra.

An examination of the ballots in question, Numbered 3, 5, 7 and 8, does not reveal a motive or a common, preconceived plan or design to commit the wrong of identifying a ballot or ballots. No intent or purpose to identify can be found as to any individual voter. Each of these four ballots is free from objection on this ground. The ballots do not reveal votes for the same candidates and there is nothing to indicate that the persons voting them were of the same mind or purpose in the election. We hold that there is no identifying mark on any of these ballots. In so holding no rule is established which may lead to a destruction of the secrecy of the ballot. The check mark is not an identifying mark here, but we do not hold that it cannot be and when used with intent and purpose to identify or in circumstances indicating a common design, scheme or purpose it may well be considered an identifying mark and render the ballot invalid.

Having determined that the intention of the voter is clearly expressed and that there is no violation of the secrecy of the ballot, it is necessary to consider whether the marking used meets the requirements of the statute. Our statute, R. S. Mo. 1949, Sec. 111.580, provides that the voter shall ''mark cross (X) marks in the squares at the left of the names of candidates for # # # for whom he wishes to vote'' and further that ''A cross (X) mark is any line crossing any other line at any angle within the voting space, and no ballot shall be declared void because a cross (X) mark therein is irregular in form.''

There are many markings or symbols that come within the definition or the meaning of a cross or cross mark. Standard dictionaries list between twenty and thirty different forms, all called crosses. These range from very simple markings to those of complicated design. In Hunt v. Campbell, supra, it is said: "The many variations of the cross all have been and should be held to be a substantial compliance with the statute." The forms most commonly used, and which have been held to be in compliance with the statute, are the St. Andrews Cross, made in the form of an X, the Latin Cross or Cross of the Crucifixion, St. Anthony's cross, made in the form of a T, the Greek Cross, made by intersection of two lines at right angles, one perpendicular and one horizontal, a cross in the form of a Y used as a bearing in certain departments of applied science, and the Gregorian Cross made by two parallel lines crossing a perpendicular line at right angles. Hunt v. Campbell, supra; Parker v. Orr, supra; Greene v. Bjorseth, supra; Brents v. Smith, supra; Vallier v. Brakke, supra; Conley v. Hile, supra; Boddington v. Schaible, 134 Kan. 696, 8 P. (2) 314; Appeal of McCaffrey, 337 P. 552, 11 A. (2d) 893.

On the other hand it has been held that the check mark is not a cross and the ballot should be rejected. Greene v. Bjorseth, supra; Boland v. City of LaSalle, supra. Also, that lines forming a Y should not be considered sufficient compliance with the statute. Greene v. Bjorseth, supra; Boland v. City of LaSalle, supra. Also, that the making of two straight lines meeting at right angles to form an L is not sufficient and the ballot should be rejected. Hunt v. Campbell, supra. No case has been cited holding that a check mark or V is sufficient, but where the lines of the V cross even slightly it has been held that the ballot should be counted. Greene v. Bjorseth, supra; Brents v. Smith, supra.

The definition of a cross as given by dictionaries generally is "any figure or mark formed by the intersection of two straight lines" # # # "not parallel, lying, falling or passing athwart; transverse, oblique; intersecting." The Missouri statute uses a similar definition; "Any line crossing any other line at any angle."

Our statute sets a liberal pattern for the courts and the courts have adopted a policy of liberal interpretation in favor of the voter in all questions. The statute does not provide that a ballot should be rejected when not marked exactly as directed, but tends to favor the voter in an imperfect compliance. The provisions as to marking a ballot tend to limit the citizen in his exercise of the right of suffrage and should be liberally construed in his favor. When the statute does not expressly declare that a particular informality voids a ballot, it would appear the better policy to consider the statutory requirement as directory only. The whole purpose of the ballot as an institution is to obtain a correct expression of intention; and if, in a given case the intention is clear, it is an entire misconception of the purpose of the

requirements to treat them' as essentials; that is as objects themselves, and not merely as means. If the voter has made an honest effort to express himself in the manner provided by statute his vote should be counted. He should not be deprived of his right to vote through mere inadvertence, mistake or ignorance if his intention is expressed and there is a reasonable compliance. Of course, the rule favoring the voter when his intention is clear must be made to harmonize with the rule that requires the voter to make an effort to substantially comply with the directory provisions of the statute. The voter cannot completely ignore such directions and have his ballot counted even though he clearly expresses his intention. In this event he is not being disfranchised by legislative act or judicial interpretation, but by his own wilful act as surely as if he had remained away from the polls. .

All authorites on the subject hold that if the lines of the V or check mark cross even slightly the marking is acceptable and a substantial compliance with the statute. There is no provision as to how far beyond the point of intersection each line must extend to form a cross (X) mark. All that is required from generally accepted definitions is that the lines intersect.

In the marking on each ballot questioned here the check mark of V is formed by two straight lines that meet within the voting square at angles from 15 to 45 degrees. At the point of meeting a solid juncture is formed. The end of either line at the point of meeting is across, over or forms the end of the other line. In this sense the two lines cross one over the other, although neither extends beyond the outside margin of the other. This is particularly noticeable on Ballot No. 8 where a broad pointed pencil was used. It is true in all other markings although not so readily observed with the naked eye. We conclude that where two reasonably straight lines meet within the voting space at an angle of less than ninety degrees, forming a solid juncture so that the end of one line also forms the end of the other line, the voter has substantially complied with the statute and the vote should be counted, unless objectionable for other reasons. Each of the questioned ballots in this case meets this test and should be counted.

Next, we must consider ballot No. 1. Between the horizontal lines for voting on Councilman, Ward 2, this ballot bears a cross (X) mark in the square before the name of contestant and a similar mark before the name of William Kamp. The square before the name of Alex Frank is almost completely filled in or blacked out with pencil marks. The marking is solid to the extent that no cross mark or other figure can be distinguished. This mark or smudge is the basis of the objection made to this ballot. It is contended that this is a distinguishing mark and also constitutes a spoliation of the ballot. From what has been said herein as to distinguishing marks and considering the fact that this is the only ballot bearing a mark or smudge of this kind it cannot be held to be void for that reason. It does not appear to have

been made for fraudulent purpose or with the intent to identify. The only reasonable conclusion to be reached is that the voter, by mistake, made a mark of some kind in this square and attempted to correct the mistake by smudging it out. Many courts in other jurisdictions have dealt with this situation and have been generally of the same opinion in holding that this is not a defacing or spoiling of the ballot within the meaning of the statute. Greene v. Bjorseth, supra; Myers v. City of Albion, 30 N.E. (2d) 416, 374 Ill. 605; Brents v. Smith, supra; Hehman v. City of Newport, 39 S.W. (2d) 978, 239 Ky. 517; Appeal of McCaffrey, 337 Pa. 552, 11 A. (2d) 893; Isenburg v. Martin, 293 Ill. 408, 127 N.E. 663; 29 C. J. S. 272, Elections Sec. 187. This ballot should be counted as a valid vote for contestant.

Contested ballot No. 9 is marked with a cross (X) mark in the square before the name of contestant and with a similar mark before the name of Alex Frank. In the square before the name of William Kamp there appears one straight line extending from the upper left corner to the lower right corner. It is contended that this mark voids the ballot for the same reasons, that it is an identifying mark and is a defacing or spoiling of the ballot. This is the only mark made on the ballot other than cross (X) marks before the names of candidates for other offices. There appears to have been no effort made to erase or obliterate this mark. From the other markings it is obvious that the voter knew how to properly mark his ballot and that he did not intend by this mark to vote for William Kamp. It would seem that the voter either made this mark for the purpose of identifying his ballot or that he made it through mistake. This being the only ballot so marked, under the reasoning above applied to other ballots, we hold that it is not a distinguishing mark but one made without fraudulent purpose or design and without any intent to identify the ballot or the person who voted it.

This mark having been made by mistake, under the rule applied to ballot No. 1 above and cases there cited, the voter could have erased or smudged it without destroying his ballot. By making no effort to do either, did he void the effect of the other marks properly made, Some cases from other states so hold. Conley v. Hile, supra; Ellis, Atty. General v. Glaser, supra; Greene v. Bjorseth, supra. California cases so hold but this is because of a statutory provision. In other instances, as in Conley v. Hile, the court concludes that this is an identifying mark because a large number of ballots were so marked. This justified a finding of a common scheme or purpose and the intent to identify was present in those cases. This intent is not shown here. It was the only ballot so marked. There could have been no common scheme or purpose formed with others, and it does not appear that the mark was made with any intent to identify the ballot. The mark being insufficient to constitute an attempt to vote for anyone and having been made by mistake did not void the ballot. Myers v. City of Albion, 30 N.E. (2d) 416, 374 Ill. 605. This is true though no effort was made

to erase or obliterate the mark. The voter's failure to complete a cross by making a second line shows his intent and purpose as clearly as could be shown by erasure or obliteration. This ballot should be counted as a valid vote for contestant.

To summarize the results of the above rulings the contestant is entitled to have counted as valid votes for him contested ballots numbered 1, 2, 5, 9 and 10 and these, when added to the 171 unquestioned ballots, give him a total of 176 votes. Contestee is entitled to have counted as valid votes for him contested ballots numbered 3, 7 and 8, giving him a total of 175 votes when added to those not questioned.

There having been no tie vote for this office it is not necessary to consider points made and briefed with reference to the authority of the council to determine a tie.

The judgment of the Circuit Court is reversed and it is the judgment of this court that Edward Riefle, the contestant, was duly elected to the office of City Councilman from the Second Ward of the City of Wellston, Missouri, for the term of one year from April 4, 1950, and the cause is remanded with directions to the Circuit Court to enter judgment for contestant.

*Bennick, P. J.*, and *Anderson, J.*, concur.