**Charles FOSTER, Appellant,**

v.

**Monroe EVERT, Respondent.**

No. 71174.

Supreme Court of Missouri,
En Banc.

Aug. 1, 1989.

Farrell D. Hockemeier, Richmond, for appellant.

Stanley M. Thompson, Richmond, for respondent.

COVINGTON, Judge.

This case involves an election contest for the office of mayor of Richmond, Missouri. As a result of an election held on April 7, 1987, Monroe Evert received the certificate of election. Charles Foster contested the election. The case is before this Court for the second time on a direct appeal. On this appeal, Mr. Foster purports to raise constitutional challenges to the Comprehensive Election Act of 1977, § 115.001 et seq., RSMo 1986;[1] he thus invokes the jurisdiction of this Court. The judgment of the trial court is affirmed.

At the April 7, 1987, election, Mr. Evert received 713 votes for the office of mayor of Richmond, Missouri. Mr. Foster, a duly qualified write-in candidate, received 670 votes. On April 9, 1987, the election authority declared Mr. Evert the official winner. On April 27, 1987, Mr. Foster timely filed a petition in the Circuit Court of Ray County in which he contested the election on the basis of alleged irregularities associated with instructions given to voters. He claimed the election judges rejected over seventy ballots cast for him. He requested relief in the form of a new election or, in the alternative, a recount of the ballots the election authority rejected, to be followed by a declaration of Mr. Foster as winner of the election. Fifteen days later, Mr. Evert entered a special appearance and filed a motion to dismiss in which he alleged that the trial court lacked jurisdiction to hear the case because the summons provided for a thirty-day return in conflict with the fifteen day answering period prescribed by § 115.579, RSMo 1986, which had expired. The trial court agreed and dismissed the petition for lack of jurisdiction. On the first direct appeal of this case, this Court held that under the facts of the case the erroneous thirty-day summons did not divest the trial court of jurisdiction and re-

1. All references are to Missouri Revised Stat-   utes, 1986, unless otherwise noted.

manded for trial. *Foster v. Evert*, 751 S.W.2d 42 (Mo. banc 1988).

At trial on remand, Mr. Foster sought to establish the validity of the ballots rejected by the election judges. Foster contended the ballots in question were rejected as a result of the voters' failure to include a cross (X) mark to the left of Foster's name on the portion of the ballot known as the write-in sleeve. Mr. Foster also sought to establish irregularities in the manner in which voters were instructed on the write-in voting procedure.

Newton Hamacher, the county clerk, testified on behalf of Mr. Foster. Ray County is a third class county in which the county clerk is the election authority. Mr. Hamacher described the voting procedure implemented by the election judges during the election at issue. According to Mr. Hamacher, election judges presented each voter with one punch card around which was wrapped one write-in sleeve. The card and the sleeve comprise a ballot. The voter could use the punch card to vote for Mr. Evert or the write-in sleeve to vote for Mr. Foster. The voter voted the ballot and presented it to the election judge, who tore off the top part of the ballot, then returned the remaining portion to the voter, who deposited it in the ballot box. Mr. Hamacher also described the procedures used to count the voted ballots. The punch cards were counted mechanically while the write-in sleeves were counted by hand. Mr. Hamacher did not know how many write-in sleeves were rejected; only the number of rejected punch cards was listed on the certification sheet. Mr. Hamacher testified that he could not be certain of the actual procedures used in counting the ballots, but he stated that he properly instructed the election judges on the proper method of ballot counting. When asked about ballots on which the voter selected two candidates for the same office, Mr. Hamacher testified that "normally we catch it." Two ballots were rejected because of "over-voting," that is, the voter both wrote in Mr. Foster's name and marked an X on the sleeve as well as punched a card for Mr. Evert.

On this evidence and over the objection of Mr. Evert, the trial court found a *prima facie* case of irregularity and permitted Mr. Hamacher to examine and count the ballots contained in certain exhibits which had been offered and admitted into evidence. Mr. Hamacher did so, and the trial court participated. The trial court subsequently found that 670 voters wrote the name of the write-in candidate on the write-in sleeve and made an "X" beside the name, so that their intent was clear, and that sixty-seven voters wrote in the candidate's name on the write-in sleeve but failed to make an "X" or other mark as required by § 115.439. The trial court found that the intent of the voters of those sixty-seven write-in sleeves could not clearly be determined. The trial court noted that it was possible that one or more voters wrote Mr. Foster's name on the write-in sleeve and also voted by punching the square beside the name of Mr. Evert on the punch card. The trial court entered judgment in favor of Mr. Evert.

On appeal, Mr. Foster first purports to challenge the constitutional validity of § 115.439, which delineates the manner in which a write-in vote may be voted. The statute prescribes that a voter place a cross (X) mark on the write-in sleeve in the square directly to the left of the name of the write-in candidate. Mr. Foster references no constitutional provision violated by the statute; rather, his argument is that a subsequent, more general section, § 115.453 takes precedence over the more strict requirements of § 115.439.1(3). Section 115.453(3) provides:

No vote shall be counted for any candidate that is not marked substantially in accordance with the provisions of this section. The judges shall count votes marked substantially in accordance with this section when the intent of the voter seems clear. . . .

Mr. Foster contends that the issue of voter intent should be dispositive when determining whether to count a ballot and further contends that the election judges could ascertain the intent of voters without the "X" being placed by Mr. Foster's name on the write-in sleeve. Mr. Foster posits a number of arguments in support of his

contention which, if accepted, would permit the election authority to count the sixty-seven rejected ballots.

■ It is unnecessary to decide whether § 115.453 takes precedence over § 115.439, however, for even if the Court were to accept each of Mr. Foster's arguments, there is still no means by which to determine the intent of the voters, a prerequisite to counting the votes. The testimony presented in the trial court does not assist this Court in ascertaining the reason for the election judges not counting the ballots. At one point Mr. Hamacher stated he did not know the reason for rejection of the disputed ballots:

MR. HOCKEMEIER: And as a matter of fact, the write-in ballots which were rejected, many of them were rejected for lack of an "X."

MR. HAMACHER: I don't know that.

And, later in the hearing Mr. Hamacher's responses were equivocal in light of the fact that pursuant to § 115.447.2(1), (2), (3) a ballot may be determined defective, rejected or spoiled for numerous reasons in addition to the failure to contain a cross (X) mark on the write-in sleeve:

MR. HOCKEMEIER: So we have an excess of sixty write-in votes that were obviously voting for Charles Foster, but without the "X," so they weren't counted?

MR. HAMACHER: Yes, we had invalid ballots, yes, sir.

MR. HOCKEMEIER: Okay. But that would be in excess of forty-three, is that correct?

MR. HAMACHER: Yes.

MR. HOCKEMEIER: And those ballots were not counted because either they didn't have the "X," or they didn't have the word "mayor?"

MR. HAMACHER: They were not counted because they did not comply with the statutes, with the instructions on the write-in ballot.

On the record presented in this case, therefore, this Court may attempt to ascertain the intent of the voter only by examining the complete ballot. The complete ballot consisted of a punch card around which was wrapped a write-in sleeve. Although a number of the write-in sleeves have stamped words on the sleeve which say "spoiled or rejected" in addition to containing hand written words "no X mark," neither Mr. Hamacher's testimony nor any other evidence in the record establishes the reason or reasons for the election judges' failure to count a particular ballot. Mr. Foster has failed to establish that election officials rejected the contested ballots solely because the write-in sleeves failed to contain the cross (X) mark. Mr. Foster has failed clearly to establish any single reason for rejection of the ballots. Thus, he has failed to establish voter intent.

■ Mr. Foster's second point asserts that § 115.439.1(3) is unconstitutional as applied. Mr. Foster's argument, however, does not constitute a constitutional challenge but, rather, addresses an alleged irregularity in the manner in which voters were instructed by the election authority. In support of his argument, Mr. Foster refers to testimony from Beverly Trindle who was neither an election judge nor a qualified voter for the City of Richmond election. She testified that she attended a pre-election meeting where Mr. Hamacher gave instructions on the proper marking of write-in sleeves. Over objection, Ms. Trindle testified that she did not hear the election authority mention the necessity of placing an "X" on the write-in sleeve. Mr. Hamacher's testimony directly controverts Ms. Trimble's. Mr. Hamacher testified that he informed the persons present at the meeting that, in order for a write-in sleeve to be counted, the sleeve must contain an "X" in addition to the name of the write-in candidate and the office. Mr. Hamacher testified that all voters in the April 7, 1987, election were provided with both a punch-card and a write-in sleeve. The write-in sleeve itself contained specific instructions for voting for the write-in candidate, which included placing an "X" in the square opposite the candidate's name.

Mr. Foster presents absolutely no evidence that even one voter was erroneously instructed as to the proper procedure for using a write-in sleeve. There is no compe-

tent evidence in the record to rebut the testimony of the election authority. Furthermore, the trial court was free to believe Mr. Hamacher's testimony and to disregard that of Ms. Trindle. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The allegation of irregularity fails.

■ Mr. Foster finally asserts that, since the election authority rejected sixty-seven ballots for him, it should similarly reject sixty-seven votes for Mr. Evert. Mr. Foster's argument seems to presume that every voter who used a write-in sleeve which was rejected also punched a card on the same ballot for Mr. Evert and that the election authority counted all of the punch card votes for Mr. Evert. In support, Mr. Foster points solely to evidence that two ballots were "over-voted," that is, were voted for Mr. Foster on the write-in sleeve and for Mr. Evert on the punch card, and that the election authority rejected these two ballots. The record does not support Mr. Foster's contention that the election officials rejected all over voted ballots. The punch cards and write-in sleeves, of course, are not now matched; thus there is no manner through which to determine which write-in sleeve accompanied which punch card. Absent other competent evidence with respect to election procedures of handling over voted ballots, not presented in this case, it is impossible to determine whether a voter who attempted to write in a vote for Mr. Foster did not also punch a card on the same ballot for Mr. Evert. The Court cannot, therefore, presume that every voter who used a write-in sleeve which was rejected also punched a card on the same ballot for Mr. Evert and that the election authority counted all of the punch card votes for Mr. Evert; there is simply no evidence to support this presumption.

The judgment of the trial court is affirmed.

WELLIVER, RENDLEN, HIGGINS and BILLINGS, JJ., concur.

BLACKMAR, C.J., dissents in separate opinion filed.

ROBERTSON, J., dissents and concurs in separate dissenting opinion of BLACKMAR, C.J.

BLACKMAR, Chief Justice, dissenting.

I disagree with the principal opinion, because I believe that the case should be decided solely by recount of the ballots, and that it is neither necessary nor proper to adduce testimony of the election officials as to why certain ballots were counted or rejected.

The trial judge defined the issue as follows:

> Is it necessary for a voter desiring to cast a write-in ballot in accordance with Chapter 115.439, R.S.Mo., to make an "X" or other mark to the left of the name of the write-in candidate in order to have the write-in vote counted?

The court found that 670 voters cast write-in ballots for the contestant, by writing his name and the title of the office on the sleeve furnished with the punch card, and then placing an "X" mark opposite the written name. 67 voters wrote the name but "failed to make an "X" mark or other mark." These latter ballots were placed by the precinct judges in envelopes or bundles marked "spoiled or rejected," and delivered to the county clerk's office along with the other election materials. If the 67 ballots were added to the 670, the contestant would receive 737 votes to the contestee's 713.

It appeared from the county clerk's testimony that two voters properly wrote the name of the contestant on the ballot with the "X" opposite his name, but also punched the contestee's name on the punch card. These ballots were rejected by the precinct judges for "double voting," and were returned to the county clerk's office with the election materials. There is no evidence that any other ballots were rejected for double voting. Nor is there any indication that the judges did not perform their duty by delivering all of the election materials, including punched cards, sleeves with write-ins (whether counted or rejected), spoiled punch cards, and unvoted cards and sleeves, to the county clerk after the election.

The contestee relies primarily on § 115.439.1(3), RSMo 1986, reading as follows:

> If the voter desires to vote for a person whose name does not appear on the ballot, he may cross out a name which appears on the ballot for the office and write the name of the person for whom he wishes to vote above or below the crossed-out name and place a cross (X) mark in the square directly to the left of the crossed-out name. If a write-in line appears on the ballot, he may write the name of the person for whom he wishes to vote on the line and place a cross (X) mark in the square directly to the left of the name.

The contestant places primary reliance on § 115.453(3), RSMo 1986, reading as follows:

> No vote shall be counted for any candidate that is not *marked substantially in accordance* with the provisions of this section. The judges shall count votes *marked substantially in accordance* with this section when the intent of the voter seems clear. No ballot containing any proper votes shall be rejected for containing fewer marks than are authorized by law. (Emphasis added).

Both sections were enacted under the Comprehensive Election Act of 1977, 1977 Mo.Laws 207.

I would hold that § 115.453(3) should be applied, and that a person who writes the name of a qualified write-in candidate should be held to have properly voted for that candidate, even though the "X" is omitted. I cannot see any reason for his writing the candidate's name if there were

no purpose of voting for that candidate. I would hold as a matter of law that the intent of the voters of the 67 irregular write-ins was clear. The modern tendency is to require only substantial compliance with technical requirements, and to indulge every presumption in favor of the voters' expressed choice.[1] The trial court, in citing *Hope v. Flentge*, 140 Mo. 390, 402, 41 S.W. 1002, 1007 (1897), echoes a more severe standard of an earlier day.

The trial judge, as the sole reason for rejecting the 67 ballots, suggested that the intent of the voter who omitted the "X" was not clear because the voter might also have punched the card in the manner appropriate for a vote for the contestee. There is no evidence whatsoever that any voter did this. I suppose that election judges who felt that a write-in without the "X" was insufficient might treat the purported vote on the sleeve to be a nullity, so that a ballot punched for the contestee would not be a prohibited double vote and would be placed in line for mechanical counting. If the judges proceeded in this manner then the contestee could conceivably have been credited with as many as 67 votes that should not have been counted for him, because the voter had actually cast a prohibited double vote. But in any event the contestee received no more than 713 punch card votes and, if my initial assumption about the legal issue is correct, the contestant should have received an additional 67 votes. It makes no difference that the contestee may have been credited with votes that should have been eliminated. If the contestant is entitled to the votes with the name written but without

---

1. While election results are not to be lightly set aside and statutory requirements must be followed, this Court has long recognized that election laws must be liberally construed in order to sustain the choice of the electorate. *Kasten v. Guth*, 375 S.W.2d 110, 113 (Mo.1964), appeal after remand, 395 S.W.2d 433 (Mo.1965); *Armantrout v. Bohon*, 349 Mo. 667, 162 S.W.2d 867, 871 (1942); *State ex inf. McKittrick v. Stoner*, 347 Mo. 242, 146 S.W.2d 891, 894 (1941); *Nance v. Kearbey*, 251 Mo. 374, 158 S.W. 629, 631 (Mo. banc 1913). Section 115.453(3) recognizes as much by validating ballots marked "substantially in accordance" with that section. Unless a statute expressly voids a technically

irregular ballot, such a ballot is valid so long as the voter's intent is clear. *See Kasten, supra,* 375 S.W.2d at 114–116 (misspelled or incomplete name of candidate); *Felker v. City of Sikeston,* 334 S.W.2d 754, 756–757 (Mo.App.1960) (technically incorrect ballot form); *Riefle v. Kamp,* 241 Mo.App. 1151, 247 S.W.2d 333, 336–341 (1952) (ballots missing stickers; improperly marked and smudged ballots).

Authority from other jurisdictions likewise acknowledges liberality in dealing with technical irregularities. *See generally* 29 C.J.S. Elections § 180 (1965); 26 Am.Jur.2d Elections § 257 (1966); Annot., 86 A.L.R.2d 1025 (1962).

the "X", it can be said without fear of contradiction that he received a majority of the valid votes.

Any other conclusion would mean that there could never be an effective contest of an election in which write-ins are significant. The write-in sleeves and the punch cards cannot be kept together. The voter deposits the ballot in a sleeve. The precinct judges separate the cards from the sleeves and tabulate the write-in votes, in substantially the same manner as paper ballots are tabulated. All election supplies and unused ballots, including any spoiled or voided ballots, are returned to the election authority (which, in this case, is the county clerk.) The punch cards are then tabulated by the use of the central processing equipment. This procedure cannot be followed unless the punch cards are separated from the sleeves.

The trial judge recognized as much by overruling the contestee's objection to unsealing and recounting the votes. The judge stated:

> So the allegation has been there were 70 votes rejected improperly. The margin of victory was 43 votes. *The clerk in this case, because of the way the ballots were delivered to him, has no independent means of proving or disproving the fact that the 70 votes in question were improperly thrown out or improperly counted,* and because of that fact, I think a prima facie case [to examine the ballots] has been made.... (Emphasis added).

It is unrealistic under the circumstances of this case to require the contestant to prove, by evidence extrinsic to the ballots themselves, why the ballots were rejected, and the showing would be immaterial. The contestant should not be required to establish facts that the county clerk, the chief election authority in the premises, could not establish. The principal opinion affirms on a ground not relied on by the trial judge. This is not inappropriate, if the law supports the reason but shows that the case is not disposed of on factual grounds. Nor do I find legal authority for the holding of the principal opinion.

It should not be necessary to secure the testimony of election officials in the precincts, as to why they may have rejected purported votes listed on the ballot sleeves. An election contest is not an appeal on a record made before the election officials. The issue may be fully determined from the residual materials deposited with the county clerk and received in evidence. We may presume that the officials did their duty by returning all the materials, and that nothing was lost or destroyed. What is now at issue is not why the judges may have counted or rejected certain ballots, but how the ballots in evidence should be counted. The trial judge's findings, as opposed to his legal conclusions, are clear on this point. The court is in a position to make a complete recount, superseding the count of the election officials. This is the nature of a contest.

The Court, at the very least, should consider ordering a new election because of "irregularities of sufficient magnitude to cast doubt on the validity of the initial election ..." *Marre v. Reed,* 775 S.W.2d 952 (Mo. banc 1989). I did not join that opinion, but accept its authority. This case seems more compelling for relief than that one.

I would reverse and remand with directions to enter judgment for the contestant.