## Chappell v. Colson.

(Decided September 28, 1920.)

### Appeal from Bell Circuit Court.

1. Elections—Ballots—Manner of Voting.—When by a statute regulating elections a particular method of voting by secret ballot for a person whose name is not printed on the ballots, is prescribed, such method must be observed by the voter; and any other manner of voting that may be resorted to by the latter in the use of the ballot, whether directed by others or adopted of his own volition, will render it invalid.

2. Elections—Voting for Person Other Than One Whose Name Printed on Ballot—Illiteracy or Blindness.—While a qualified voter may vote for any qualified person other than those whose names are printed on the ballots as candidates for any office to be filled, he must, as required by Kentucky Statutes, section 1471, do so by writing with a black lead pencil, under the designation of the office, the name of such person and placing to the right of such name a (x) mark. If, however, by reason of illiteracy, blindness or other physical cause the voter is unable to write on the ballot the name of the person for whom he desires to vote and to make the required mark at the right of such name, it may, at his request and in his presence, be done for him by the clerk of the election in the manner prescribed by the statute.

3. Elections—Pasting Printed Name on Ballot—Invalid.—Where, at a municipal election held for the election of two councilmen from each of its five wards, the appellant, whose name was not printed nor entitled to be printed on the ballots as a candidate for councilman from the fifth ward, received therein twenty votes for that office by the casting of twenty ballots for him, on each of which was pasted by the voter in the space wherein his name might have been written, pasters or slips containing his printed name with a cross mark on the ballot to the right of the paster, the action of the circuit court in declaring these twenty ballots invalid and excluding them in its recount of the vote, was not

error. And as the exclusion of the twenty invalid ballots left a majority of legal votes in favor of appellee for the office of councilman from the fifth ward, he was properly adjudged duly elected to the office.

JAMES H. JEFFRIES for appellant.

N. R. PATTERSON for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

By this action in equity brought in the Bell circuit court the appellee, M. G. Colson, contested the right of the appellant, J. S. Chappell, to qualify and act as a member of the city council of Pineville, Bell county, this state; to which office the latter claimed to have been elected from the fifth ward of that city at the November election 1919.

According to the canvass of the ballots and certification of the result made by the board of election commissioners, appellant was found to have received twenty-five and appellee twenty-four votes for the office in question and the former declared elected thereto. But, following an inspection and recount of the ballots by the circuit court on the trial of the contest raised in this action, it was held by the court that twenty of the twenty-five votes certified by the election board to have been received by appellant were illegal, and that the ballots containing them were illegally cast and counted; and further that as their exclusion left, as shown by legal ballots cast, a majority of nineteen legal votes for appellee, he was entitled to the office and should be permitted to qualify and enter upon the performance of its duties. From the judgment of the circuit court thus depriving appellant of the office of councilman and giving it to appellee the former prosecutes this appeal.

The exclusion by the circuit court of twenty of the votes received by appellant was, as stated in its judgment, because of the use on the excluded ballots of "pasters" containing his printed name. These pasters, or slips of paper, with appellant's name printed thereon, were handed by certain of his friends at the polling place, while the election was going on, to voters expressing an intention to vote for applelant with instructions that upon entering the voting booth they vote for him by pasting the slip or pasters containing his printed name on the ballot and making a cross mark in the square on the ballot opposite or at the end of the paster. The

pasters thus given voters were used by the latter according to instructions in voting for appellant, at least, to the extent of twenty of the ballots cast for him; leaving but five received by him on which his name was written, by the voters casting them, with a black lead pencil, as required by the statute respecting a person voted for by ballot whose name is not printed on the ballots as the nominee of a political party or by petition, before the election, by order of the county clerk. As already stated, the votes shown by the five ballots last mentioned were the only votes allowed appellant by the judgment of the circuit court. So the question to be decided by this court is, was the failure of the circuit court to count for and allow appellant the twenty ballots on which his printed name as the candidate voted for was placed by pasters, authorized by the law governing the election?

The number of pasters used at the election, manner of using them and the fact that no pasters were used on the ballots cast for appellee, is shown by the ballots themselves; all cast in the election, both for appellant and appellee, being before us as a part of the record on this appeal. It appears from the evidence, and is conceded by appellant, that at the November election 1919 two members of the city council were required to be and were elected from each of the five wards of the city of Pineville, and that the names of appellee and Robert Elliott were the only names printed on the ballot issued for use in the election as candidates for councilmen from the fifth ward. Such printing of their names thereon having been done by order of the clerk of the Bell county court in obedience to petitions, each signed by the requisite number of voters, filed in his office as provided by Kentucky Statutes, section 1453, which designated a device for both candidates, other than that used by any political party, to appear above their names; and the device thus designated was printed on the ballots above the names of the two candidates, as was a circle immediately under the device and a square opposite the printed name of each candidate as places for making the cross mark to indicate the votes of users of the ballots. The ballots also contained the required vacant lines or spaces and squares opposite for use by those desiring to vote for a person or persons other than the candidate or candidates whose names were printed on the ballots, and whcih could be so used by writing therein, with a black lead pencil, the name of the candidate desired to be voted for and making with a stencil a cross mark in the square opposite. The

vacant lines or spaces on twenty of the ballots cast for appellant were used by pasting in them the slips or pasters containing his printed name and adding the cross mark in the squares opposite. Appellant made no attempt to have his name printed on the ballots, nor does he claim to have possessed such right, either as the nominee of a political party or by the filing with the county clerk the required petition. In fact he does not seem to have been a candidate for councilman prior to the election, or, at any rate, was never announced as such until the day it was held, down to which time appellee believed himself, as was his running mate, Elliott, without opposition. Appellant or his friends undoubtedly had a right to conceal his candidacy or withhold announcement of it until the day of the election, but in so doing he was deprived of the privilege of having his name appear on the ballot in printed form or under a device. In such case those desiring to secure his election by voting for him could do so only in the manner prescribed by Kentucky Statutes, section 1471, which, regarding the manner of voting, duties of election officers and "voting for a person not on the ballot," among other things, provides: "Nothing in this law contained shall be so construed as to prevent a voter from voting for any qualified person other than those whose names are printed on the ballots for any office to be filled, *by writing with a black lead pencil, under the designation of the office, the name of such person and placing to the right of such name a (x) mark.* All marking upon the ballots shall be made with black ink stencil. There shall be kept in each booth the necessary stencils and pencils, to be securely fastened by a string or cord of sufficient length to enable voters to use the same."

As the foregoing provisions of the statute, *supra,* prescribe a particular method of voting by secret ballot for a person whose name is not printed on the ballot, such method must be observed by the voter; and any other manner of voting that may be resorted to by the latter in the use of the ballot, whether directed by others or adopted of his own volition, will render it invalid. If, however, by reason of illiteracy, blindness or other physical cause the voter is unable to write on the ballot the name of a person for whom he desires to vote and to make the required mark at the right of such name, it may, at his request and in his presence, be done for him by the clerk of the election in the manner prescribed by the statute regulating elections. An illustration of our meaning

is furnished by the opinion in Edwards v. Loy, 113 Ky. 746, in which it was held that a voter who wishes to vote for a person whose name is not printed on the ballot as permitted by section 1471, Kentucky Statutes, must write the name himself, and stamp in the square opposite the name; and therefore ballots stamped only in a device at the head of a column, were improperly counted for one whose name was written in the column by the clerk of the election before handing the ballot to the voter.

The question under consideration was, however, more recently decided in Parrish v. Powers, 127 Ky. 164, upon a state of facts largely analogous to those of the instant case. In that case Powers, who desired to get his name on the election ballots to be voted for as a candidate for the office of county surveyor, after they had been delivered by the county clerk to the election officers of the various precincts, had his name printed on slips or pasters which, on the morning of the election, he caused to be pasted by the election officers on the ballots under the democratic device in all the precincts save two, when in fact he had not received the democratic nomination nor entitled himself to get on the ballot by petition. His name was not written on any ballot by any one voting for him, nor stamped in the square opposite his name; but on all the ballots counted for him the cross marks indicating the votes were stamped in the circle under the democratic device. On the foregoing facts we held that the attaching of pasters to the ballots containing the printed name of Powers was illegal, that none of the votes he received should have been counted for him, and that his alleged election, notwithstanding the certified majority accorded him by the election returns, was void; hence, Parrish, the republican nominee and contestant, by reason of his having received all the legal votes cast at the election, was adjudged entitled to the office in question.

Regarding the illegality of the use of pasters on official ballots the opinion declares:

"Elections are to be held by secret ballot, Kentucky Statutes, section 1446. The only contingency in which pasters may be used is in case of death, removal or resignation of a candidate after the printing of the ballots; and in that event the chairman of the political party of which the candidate was a member may make a nomination to fill the vacancy and provide the election clerk of each precinct with pasters containing only the name of the candidate."

The correctness of the conclusion thus expressed in the opinion of the case, *supra,* is shown by the language of section 1464, Kentucky Statutes, which provides:

"In case of the death, removal or resignation of any candidate after the printing of such ballots, and before such election, it shall be lawful for the chairman of the state, district or county political organization of which such candidate was a member to make a nomination to fill such vacancy, and to provide the election clerk of each precinct in which such candidate is to be voted for with a number of pasters containing only the name of such candidate, at least equal to the number of the ballots provided each precinct; but no pasters shall be given to, or received by, any one except such clerk, and it shall be the duty of said clerk to put one of such pasters, in a careful and proper manner, and in the proper place, on each ballot before he shall sign his name thereon."

Even if the court had not in the cases, *supra,* declared the use of pasters in such a state of case as is here presented illegal, it would be safe to say that such a conclusion is fully authorized by the language of section 1464 of the statute, *supra,* which is self explanatory and also mandatory. In other words the statute sustains the action of the circuit court in rejecting the ballots containing pasters that were cast for appellant.

Regarding the allegations of bribery and fraud on the part of appellee in obtaining the votes received by him, contained in appellant's answer, it is only necessary to say that the burden of proof was upon appellant to prove these charges; and as no such proof was introduced by him, we must conclude that the charges of bribery and fraud were and are untrue. Being of the opinion that the judgment appealed from correctly determined the rights of the parties, it must be and is affirmed.