PACE *v.* HICKEY.

5-3048                                                    370 S. W. 2d 66

Opinion delivered June 3, 1963.

[Rehearing denied September 9, 1963.]

*John B. Driver* and *Roy E. Danuser,* for appellant.

Appellee's Brief stricken.

GEORGE ROSE SMITH, J. This is an election contest. In the 1962 general election the appellant, the Democratic nominee for the office of Sheriff of Marion County, was opposed by the appellee, a write-in candidate. The appellee was certified to have been the winner by a vote of 969 to 961. This is an appeal from a judgment upholding that certification. We are presented with only two questions, both involving the use of printed stickers in behalf of the write-in candidate.

All the facts were stipulated. Before the election the appellee arranged for the printing and distribution throughout the county of stickers bearing his name, for use by the electors. The appellee received 969 votes to the appellant's 961, but 539 of the appellee's votes were cast by the pasting of stickers to the ballots. On 100 or more of these votes the X-mark, indicating the elector's choice, had been placed on the sticker by someone other than the elector and at some time before the elector entered the polling place and affixed the sticker to his ballot.

It is first contended that no vote cast by means of a sticker should be counted, for the reason that the statute refers only to "write-in votes," and a printed sticker does not satisfy the requirement that the name be written. Ark. Stat. Ann. § 3-826 (Repl. 1956). This identical contention was rejected in *Bennett* v. *Miller*, 186 Ark. 413, 53 S. W. 2d 853, under a statute permitting the elector to "write the name of any person for whom he may wish to vote." In holding that the law permitted the use of stickers we said:

"We do not think the word 'write' is there used in a technical sense, but that such name might be placed on the ballot in any convenient way, such as the use of a rubber stamp or a sticker as was done in this case. As said by this court in *Ashby* v. *Patrick*, 181 Ark. 859, 28 S. W. 2d 55: 'If the ballot voted on was such as not to mislead the electors but to give them an opportunity to express their will, it was sufficient.' So here the ballot did not have the names of any persons who were candidates for directors. It was left to the electors to vote for whom

they pleased by 'writing' their names on the ballots. If they chose to use stickers with the names of the persons they desired to vote for printed thereon we can see no valid objection thereto, and there is no provision of statute violated.''

*Bennett* v. *Miller* was decided in 1932, more than thirty years ago. If we misconceived the intent of the statute the lawmakers have had many opportunities in the intervening years to set the matter right. No such action has been taken. To the contrary, when the present statute was enacted in 1949 the legislature contented itself with a reference to ''write-in votes.'' We are unwilling in effect to modify the statute by overruling the *Bennett* case. The contestant's broad objection to the use of stickers cannot be sustained.

The appellant's other argument is directed against the one hundred or more write-in votes involving stickers already marked with an X when the voter entered the polling place. Counsel rely on *Edwards* v. *Williams*, 234 Ark. 1113, 356 S. W. 2d 629, where it was held that an election judge could not be allowed to take a ballot out to be marked by a disabled voter in her car, because the statute provides that no person shall be permitted to carry a ballot outside the polling place. Ark. Stat. Ann. § 3-834 (Repl. 1956).

All the stickers in the case at bar were marked with an X; so we are not confronted with an attempt to cast a write-in vote without the use of an X. The only question is whether the X may be placed on the sticker before the voter enters the polling place. We hold that it may be. The use of printed stickers is permissible, as we have seen. This means that the write-in candidate's name may be printed on the sticker before the voter reaches the polls. This being true, there is no good reason for saying that the X-mark, if one is actually necessary, cannot also be put on the sticker in advance. What the statute requires is that the voter mark his ballot inside the polling place. Here the marking of the ballots was accomplished by the affixation of stickers. As long as that substantive step was taken inside the polling

place it made no difference, under either the letter or the spirit of the statute, when or where the making of the X-mark took place.

The appellant has moved to strike a portion of the appellee's brief, which attributes seriously wrongful conduct to the appellant's counsel and to the special county judge who heard the case in the first instance. These accusations appear in the appellee's brief as assertions of fact, but they are wholly unsupported by any proof in the record. Their inclusion in the brief is a clear-cut violation of Rule 6 of this court and an inexcusable breach of the obligation of professional courtesy that we expect on the part of members of the bar. All copies of this brief will be stricken in their entirety from the files of the court.

Affirmed.

HARRIS, C. J., concurs. JOHNSON, J., dissents. HOLT, J., not participating.

CARLETON HARRIS, Chief Justice (concurring). I am concurring, rather than dissenting, because I feel that appellee and his supporters had a right to rely on the *Bennett* v. *Miller* decision mentioned in the present majority opinion. In the *Bennett* opinion, the court said:

"We think it makes no difference how the electors placed the names of the persons they desired to vote for on the ballots in the absence of fraud. They might have been written with pen and ink, pencil, typewritten, or by stickers and the result would be the same, as in either case it expressed the wish of the individual elector."

I strongly disagree with the thought therein expressed and with the holding in the case. To me, the word, "write," means "lettering by hand," (though the term probably now, by usage, includes typing). However, I find no definition of the term, "writing," that includes "sticking" or "pasting."

Election contests are difficult cases, and a contestant in an election case carries a great burden in endeavoring to establish fraud in any such suit. I feel that this court should go as far as legally possible in its decisions to minimize the possibility of fraud in future elections—and here, we are only required to say that "write" means just that—*"write"*.

I believe that the use of stickers makes fraud easier to perpetrate. If a voter does not care to vote for anyone in particular race, he will make no mark on the ballot at all, and there is nothing to prevent an unscrupulous judge or clerk at an election from reaching into his pocket and placing a paste-on vote on such a ballot. It would be indeed difficult to establish that this paste-on vote was placed on the ballot by someone other than the voter —but, if we stay with the statute, the way is clear to eventually determine whether the voter cast that vote, *i.e.*, through an examination of the handwriting.

However, there is, in my view, an even better reason for holding paste-on votes invalid, *viz.*, the use of the stickers destroys the secrecy of the ballot. Most people like to maintain secrecy in casting their votes; they desire to express themselves at the polls without fear of losing someone's good will, or business. Frequently, the voter may be friendly to both candidates, or both may be good customers, and he desires to maintain that friendship, or business, after the election. *He is entitled to cast his vote, free from duress, and without fear of retaliation.* In most instances, at a general election, there would probably only be a single race where a "write-in" candidate would go to the trouble and expense of preparing stickers in advance. (This has been the case in previous elections where such stickers were used.) When the voter approaches the polls, he is likely besieged—and beseeched— by those offering the stickers. Let it be borne in mind that the offer of a sticker is entirely different from merely offering campaign literature, for a voter ostensibly could have but one purpose in taking a sticker—that purpose being to use it after he enters the polling booth. If he refuses to take a stick-

er, he is immediately marked by the person offering it—and bystanders—as a voter who will cast his vote for the man whose name is already printed on the ballot. If, on the other hand, he takes the sticker, bystanders mark him as one who intends to cast his vote for the "write-in" candidate—else he would not have taken the sticker. Actually, the voter might accept the sticker as a matter of avoiding embarrassment—but he is still labeled by those viewing the incident as a supporter of the write-in candidate. In addition, the voter's use of the sticker can certainly be detected after he enters the polling booth, and prepares to cast his vote. One needs only to glance around to identify those who are pasting stickers on the ballots. The secrecy of the ballot is thus utterly and completely destroyed. To prohibit the use of stickers takes no right away from the voter. He still has the privilege of casting his vote for his candidate by simply writing in the name.

The majority feel that it is up to the Legislature to prohibit the use of stickers. Inasmuch as, in my view, this court made the original mistake in interpreting the word, "write," I deem it proper that we should make the correction. We have only the one decision which approves the use of stickers. This opinion was rendered under a different statute, and in a school election case where no names were printed on the ballot. To my way of thinking, we now have the opportunity to correct a serious mistake. When the majority opinion is handed down, precedent will be firmly established. The fact that the court once erred is no reason to err again.

I would affirm this particular case for the reason set forth in the opening paragraph, *i.e.,* appellee was entitled to rely upon the *Bennett* decision. However, I think that the court should now plainly state that the *Bennett* decision cannot be relied upon in the future; that "paste-on" votes will no longer be considered valid votes, and that the word, "write-in" means exactly what it is taken to mean in common usage.

Jim Johnson, Associate Justice (dissenting). Words cannot adequately express my extreme disagreement with that part of the majority opinion which holds valid the 100 or more votes admittedly marked by someone other than the elector and outside of the polling place.

My conscience will not permit me to be a party to an opinion placing the stamp of approval of this court upon such conduct.

For the reasons stated I respectfully dissent with all the vigor at my command.