## BOARD OF ELECTION COMMISSIONERS OF ST. LOUIS COUNTY, Plaintiff–Respondent,

v.

## Michael KNIPP, Defendant–Counterclaimant–Appellant,

v.

## Douglas NUTE, Defendant–Respondent.

### No. 71912.

Supreme Court of Missouri, En Banc.

Feb. 13, 1990.

Rehearing Denied March 13, 1990.

Richard P. Dorsey, St. Charles, Lawrence E. Wines, St. Louis, for defendant-counterclaimant-appellant.

Steven W. Garrett, Clayton, for respondent.

ROBERTSON, Judge.

This case involves an election contest brought by the Board of Election Commissioners of St. Louis County ("the Board"). The dispositive issue asks whether the Board has authority to seek a new election through an election contest. We hold that Section 115.600, RSMo 1986, limits the remedies available to the Board to filing a petition for a recount. We hold that the circuit court was without jurisdiction to order a new election. The judgment of the circuit court is reversed.

I.

On April 4, 1989, the Board conducted the municipal election for membership on the city council of the City of Ferguson, Missouri. The incumbent, Michael Knipp, received two hundred thirty-one votes and the declared write-in candidate, Douglas Nute, received two hundred seventeen write-in votes.

Many persons desiring to vote for Nute affixed an adhesive sticker bearing only Nute's name to the secrecy envelope. The Board counted these "sticker" write-in votes for Nute, but disqualified an additional fourteen write-in votes ostensibly cast for Nute because election judges had inadvertently separated the secrecy envelopes from the ballot cards. Under normal procedure, the ballot card which bears the

"punch outs" the computer reads as votes is inserted in a secrecy envelope. Both are deposited by the voter in a ballot box. The separation of the ballot card from the secrecy envelope prevented election officials from checking for overvotes. An overvote occurs when a voter attempts to cast a vote for a write-in candidate by affixing a proper sticker or writing the name of a write-in candidate on the secrecy envelope and also casts a vote for another declared candidate for the same office on a ballot card. The Board "disqualified" a fifteenth write-in ballot found the day following the final counting of the votes in a warehouse in which election officials store the election equipment. After disqualifying these fifteen ballots, the Board certified Knipp as the winner. The fourteen separated ballots, if counted for Nute, would tie the election; the fifteenth "late" vote, if counted for Nute, would change the election result and make Nute the winner.

Aware of the errors committed by the election judges, the Board petitioned the circuit court for a new election. The petition averred that the election judges erroneously separated fifteen write-in ballots cast for Nute as marked on the secrecy envelopes from the ballot cards. The petition further alleged that this error required the disqualification of those fifteen ballots and cast doubt on the validity of the election. The Board asked the court to "order a new election." Knipp filed a counterclaim averring that a number of ballots counted for Nute should have been disqualified because (1) the printed adhesive stickers affixed to the secrecy envelopes are insufficient to constitute proper write-in votes and (2) some write-in envelopes did not contain an "X" in the appropriate box and should not be counted. Nute filed only an answer and asked the Court to declare him the winner.

The trial court found that "the irregularities [of the election judges] affected the outcome of the election such that a true and accurate count of the ballots cast cannot be had," and ordered a new election. Knipp appealed. A divided panel of the Court of Appeals, Eastern District, affirmed. We granted transfer.

## II.

Section 115.600, RSMo 1986, states:

The election authority, if convinced that errors of omission or commission have occurred on the part of the election authority, election judges, or any election personnel in the conduct of an election, *may petition the circuit court for a recount* in the same manner as any candidate for office or voter in an issue election may *petition for a recount.*

(Emphasis added).

The right to contest an election exists by virtue of statute; it is not a common law or equitable right. *State ex rel. Jackson County v. Waltner,* 340 Mo. 137, 100 S.W.2d 272, 275 (banc 1936). *See also State ex rel. Wilson v. Hart,* 583 S.W.2d 550, 551 (Mo.App.1979) ("[T]he right to contest an election exists only as defined by statute, and the jurisdiction of the circuit court is confined to those statutory provisions governing election contests.") The relief a court may grant is limited to that specifically authorized by statute. *Hockemeier v. Berra,* 641 S.W.2d 67, 68 (Mo. banc 1982).

The election law provides two remedies in an election contest when irregularities are shown: Section 115.583, RSMo 1986, permits the circuit court to order a recount; Section 115.593, RSMo 1986, authorizes the circuit court to order a new election.

■ A recount is authorized where irregularities affect only the result of an election. Section 115.583 provides that the circuit court may order a recount where there is "a prima facie showing of irregularities which place the result of any contested election in doubt." While the conduct of an election obviously affects its outcome, the "result" of an election is the official announcement of the winning candidate.

■ A new election, however, is a more drastic remedy, reserved for those situations in which the court finds "there were irregularities of sufficient magnitude to cast doubt on the validity of the initial election." Section 115.593, RSMo 1986. A

new election tosses aside the aggregate of the citizens' votes, both those properly and improperly cast, and for that reason, a new election remedy is appropriate where the validity of the *entire* election is under suspicion, not simply the *result* of the election. See *Nichols v. Reorganized School District No. 1 of Laclede County*, 364 S.W.2d 9, 13 (Mo. banc 1963) (distinguishing between validity of election as a whole and the legality of individual ballots or category of votes).

Section 115.600 permits the election authority to petition for a recount "in the same manner as any candidate for office or voter in an issue election...." Section 115.-600 does not, however, confer upon the election authority the same breadth of remedies available to a contestee. Instead, the legislature chose to limit the election authority's prerogative to a petition for a recount by express statutory language. This statutory language controls the jurisdiction of the court and limits the remedy it may grant to an election authority. The Board's petition therefore fails to state a claim upon which relief may be granted.

The trial court ordered a new election. Because Section 115.600 permits the Board to seek, and by inference the court to grant, no more than a recount, the trial court was without jurisdiction to order a new election. *Commercial Bank of St. Louis County v. James*, 658 S.W.2d 17, 21 (Mo. banc 1983).

### III.

The judgment of the trial court is reversed.

HIGGINS, COVINGTON and BILLINGS, JJ., concur.

RENDLEN, J., dissents in separate opinion filed.

FLANIGAN, Special Judge, dissents in separate opinion filed.

BLACKMAR, C.J., dissents and concurs in dissenting opinion of RENDLEN, J.

HOLSTEIN, J., not participating because not a member of the Court when the case was submitted.

RENDLEN, Judge, dissenting.

For the reasons following, I must respectfully dissent.

The majority opinion misperceives the scope of the action and the trial court's authority to entertain all issues raised by the parties. It not only fails to recognize the breadth of issues framed by the pleadings, but equally important it disregards the fact that proof was adduced by the contesting candidates justifying a recount and new election. Unfortunately, the majority treats the case as though the only significant pleading was the Election Board's petition filed under the authority of § 115.600, RSMo 1986.[1] However, even though it downplays the pleadings of the *candidates*, the majority cannot escape the fact that substantial evidence pertinent to the election contest was admitted without objection and the pleadings must thereafter be deemed conformed to the proof.

Section 115.600 authorizing the Board's petition provides:

The *election authority*, if convinced that errors of omission or commission have occurred on the part of the election authority, election judges, or any election personnel in the conduct of an election, may petition the circuit court for a *recount* in the same manner as any *candidate* for office or voter in an issue election may petition for a *recount*. (Emphasis added.)

This section, in plain terms, empowered the circuit court to hear evidence and order a *recount* on the Board's petition the same as though a *candidate* for office had petitioned for such relief. The Election Board, as well as the candidates, produced witness and documentary evidence demonstrating not only the necessity for a recount but facts concerning the disputed ballots which, when the legal issues were resolved, permitted the court to make its final determination. The recount was completed in

1. All statutory references are to RSMo 1986, unless otherwise noted.

open court and the legal status of the disputed ballots, when finally decided, resulted in a virtual tie, and the court found irregularities in the conduct of the election of sufficient magnitude to cast the election in doubt. But this was only part of the case. In addition to the recount issue raised by the election authority, the action's scope was significantly broadened by the candidates, who were unequivocally entitled to challenge the correctness of the returns under § 115.553, which in pertinent part states:

> [A]ny *candidate* for election to any office may challenge the correctness of the returns for the office, charging that irregularities occurred in the election. (Emphasis added.)

The election was conducted April 4 and on April 13, the Board filed its "Announcement of Verification." *See* § 115.507. On April 19, the Board filed its "Petition to Contest Election," and the timely answer and counterclaim of Knipp (May 2) and answer of Nute (May 5) were filed well within the thirty days provided in § 155.577. The petition alleged "errors of omission or commission have occurred on the part of the election judges in Ward 3 of the City of Ferguson in the conduct of the election," and prayed the court to determine whether the irregularities were of sufficient magnitude to cast doubt upon the validity of the election. Section 115.600 authorized a recount and the scheme for conducting such recounts is found in part in § 115.583. That section requires that if the court finds there is a *prima facie* showing of irregularities which place the result of a contested election in doubt, the court shall order a recount of all votes brought into question by the petition or its answer and that where the issue is drawn as to the validity of certain votes, a *prima facie* case is made if the validity of a number of votes equal to or greater than the margin of defeat is placed in doubt. In this connection, when a recount is ordered, the court may "pass upon the form and determine the legality of votes brought into question and ... determine the qualifications of any voter." § 115.585.2. While the majority maintains the court should not

have gone beyond the mere recount under § 115.600, I feel the court could not have ignored but instead was required to entertain contentions of the *candidates* who pressed their claims under § 115.553. On these claims, the court was empowered to consider the magnitude of the irregularities and, if necessary, to order a new election for the contested office. Section 115.593 specifies these matters as follows: "if the court ... trying a contested election determines that there are irregularities of sufficient magnitude to cast doubt upon the validity of the initial election, it may order a *new election* for the contested office.... (emphasis added)" The *candidates* challenged the correctness of the returns and Knipp challenged the Election Board's practice of counting as valid, write-in votes using preprinted adhesive stickers. Each requested separately that the court order the Board of Election Commissioners to certify him as the winner. Knipp, in his prayer, stated:

> Contestee/defendant Michael Knipp prays this court adjudge all ballots cast for Douglas Nute in the above-described manner to be invalid; that it order the Board of Election Commissioners to certify Michael Knipp as the winner of said election; for his cost expended herein including attorney's fees; for such other orders, *other and further relief* as to the court seems just and appropriate in the circumstance. (Emphasis added.)

Similarly, Nute sought an order "tallying the election results," that he be declared the winner and for "*other order, judgment and decree that may seem meet and just in the premises* (emphasis added)." Under § 115.577, the court had "exclusive jurisdiction over all matters relating to the contest and ... [could] issue appropriate orders to all election authorities in the area where the contested election was held."

In its discussion of the issues, the majority failed to afford the pleadings their fullest meaning, notwithstanding the longstanding principle that on appeal, pleadings should be given their "broadest intendment," *State ex rel. Schroeder and Tremayne v. Haid,* 328 Mo. 807, 41 S.W.2d 789, 790 (1931), and be liberally construed.

Clayton Brokerage Company of St. Louis, Inc. v. Pilla, 632 S.W.2d 300, 305 (Mo.App.1982). Consistent with these announced principles is our Rule 55.24, that "all pleadings shall be so construed as to do substantial justice." When the Election Board instituted suit under a particular statute, the candidates, as named defendants, were entitled to challenge the action of the Board and seek relief under entirely different statutory sections. The court was properly called upon, in its final judgment, to dispose of all the parties and all the issues in the case. *Weir v. Brune*, 364 Mo. 415, 262 S.W.2d 597, 599 (1954). The parties offered proof, admitted without objection, satisfying the requirements of §§ 115.553 and 115.593 from which the court determined there were "irregularities of sufficient magnitude to cast doubt on the validity of the initial election," and ordered a new election for the contested office. Finally, as noted above, pleadings must be considered amended to conform to the proof, *Steele v. Woods*, 327 S.W.2d 187, 195 (Mo.1959), and this stated policy has been codified in our Rule 55.33, which reads:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they were raised in the pleadings. Such amendment to the pleadings may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; *but failure so to amend does not affect the result of the trial of these issues.* (Emphasis added.)

I submit that the pleadings were adequately broad and the proof sufficient to require first a recount and ultimately a new election. Because of the foregoing, it is necessary to discuss the facts developed during trial and examine fully the issues raised on appeal.

Michael Knipp ("Knipp") appealed the judgment ordering a new election after the Board of Election Commissioners of St. Louis County had successfully challenged the correctness of returns in the municipal election for city councilman in the City of Ferguson. Knipp, the incumbent 3rd Ward councilman, who received 231 votes, had been certified the winner, as the challenger, Douglas Nute, a write-in candidate, had received only 217 certified write-in votes. There were, however, 14 additional write-in votes for Nute, the validity of which are contested and subject to analysis here. If counted, these votes would have brought Nute's total to 231, tying Knipp. The fourteen questioned Nute votes had been cast as write-ins upon the face of secrecy envelopes into which the punch card ballots were to have been inserted, but were declared disqualified because they had somehow become separated from the cards prior to reaching the counting officials. This effectively prevented a check for possible overvotes.

The Board filed its petition to contest the election, alleging irregularities in the counting of the fourteen questioned write-in Nute votes. The trial court found the irregularities resulted from the actions by the election judges at the polling places so that a true and accurate count of ballots cast could not be had and these irregularities were of sufficient magnitude to cast doubt on the result. Accordingly, the court ordered a new election and it is beyond cavil that there is substantial, competent evidence in the record to support the findings of the trial court. The essential facts are undisputed, many of which are found in the stipulation of the parties and when examining the judgment of this court-tried case, this Court is limited to the standard of review set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

Separate from the question of the fourteen discounted write-in votes, Knipp contends the circuit court erred in declaring valid a number of write-in votes cast by the use of preprinted, adhesive stickers with Nute's name and the office sought printed on them and an additional number that did not contain an "X" in the box to the left of Nute's name.

Consistent with its practice of many years, the Board in this contested election utilized a computer punch card ballot system in which each voter was presented

with a ballot and a secrecy envelope. After a ballot was cast, it was to be inserted in the secrecy envelope by the voter and presented to an election official. A stub was detached from the ballot, and the envelopes with the punch card inserted therein were placed in the ballot box. To cast a vote for a declared write-in candidate, the voters were instructed to write the name of the candidate on the printed form containing the appropriate blanks on the face of the secrecy envelope, which was covered by the fold-over flap of the envelope, and to place the separate punch card ballot inside the secrecy envelope. As part of the counting process the election officials were instructed to fold open the flap of the secrecy envelope and in the event there appeared to be a write-in vote, they were to close the flap and leave the punch card in the envelope. They were not to separate the two. This procedure permitted write-in voting as provided by § 115.439, RSMo 1986, plus utilization of the punch card system.

In September of last year, we made clear the importance of Chapter 115 by our opinion in *Marre v. Reed*, 775 S.W.2d 951 (Mo. banc 1989), citing *Foster v. Evert*, 751 S.W.2d 42, 44 (Mo. banc 1988). There we stated:

A general election contest challenges the validity of the very process by which we govern ourselves; it alleges that through an irregularity in the conduct of an election, the officially announced winner did not receive the votes of a majority of the electorate....

If as a result of election irregularities the wrong candidate is declared the winner, more is at stake than the losing candidate's disappointment; the people have lost the ability to impose their will through the electoral process.... An election contest ... is an action by which the contestant challenges the conduct of the election itself. In bringing an election contest, the contestant speaks for the entire electorate, seeking to assure all that the democratic process has functioned properly and that the voters' will is done. *Id.*

In *Marre* we interpreted the clear language of Section 115.585.2, which empowered the court, when a recount is ordered, with authority to "determine the qualification of any voter whose vote is brought into question." In the case now before us, further examination of § 115.585.2 makes clear that in recount proceedings the court is *also* empowered to "pass upon the form and determine the legality of the votes brought into question." In the exercise of authority found in this statutory section, the trial court proceeded and determined the issues.

Addressing first the questions as to the fourteen write-in ballots disqualified by reason of mistakes of the election officials, it is apparent those mistakes involved separating secrecy envelopes from punch card ballots at the place of voting before shipment to the Board. Such separation prevented counting officials from checking for possible double votes which might have occurred if a voter had cast a vote for more than one candidate for the same office; i.e., punching the name on the punch card ballot and in addition writing or pasting a write-in candidate's name on the write-in form printed on the face of the secrecy envelope. Such votes, described as "overvotes", are not counted. Hence the wrongful conduct of the election officials effectively disqualified fourteen write-in votes for Nute.[2]

It is conceivable the punch card ballots that were improperly separated from the secrecy envelopes might have contained votes counted in favor of Knipp. Though this possibility is unlikely, had it occurred Knipp would have been credited with votes to which he was not entitled by reason of an overvote. A more likely possibility is

2. A fifteenth write-in ballot was disqualified for the additional reason that it had not been found until the day following the final counting of the votes by the election officials and Knipp had been certified the winner. The secrecy envelope was discovered in a warehouse where the election equipment was stored by a warehouse employee. The Court need not reach the questions raised by the irregular circumstances surrounding this ballot in that the 14 ballots discussed above produced a tie and threw the result in doubt.

that the missing ballots did not reflect votes in favor of contestee Knipp but were negligently separated from their envelopes and inadvertently lost. In that event contestee Nute would have been entitled to credit for the votes cast on the questioned envelopes assuming the manner of voting was otherwise lawful. In either event, the mistakes constituted irregularities that prevented a proper tally of the votes, throwing the election result in doubt. In the language of § 115.593 these irregularities "were of sufficient magnitude to cast doubt on the validity" of the election.

Turning to the contention raised on appeal concerning the use of the stickers and pasters, Nute prior to the election had obtained printed adhesive stickers bearing his name,[3] which were distributed by Nute and his supporters to voters through the mails and at various polling places. Of the 217 votes Nute received as a write-in candidate, 211 employed these stickers. Propriety of the use of preprinted adhesive stickers or pasters is a question of first impression for Missouri courts. The only prior legal pronouncement on this subject I have found appears in a Missouri Attorney General opinion, Op.Atty.Gen. No. 65, Murrell, 9–18–52. Though not binding on this Court, that opinion expressed the view that the use of such stickers was unlawful because the then existing statute, § 111.580, RSMo 1949, mandated that the only mode of casting a write-in vote was by crossing out the printed name of the declared candidate and writing below the cancellation the name of the person for whom the vote is intended. § 111.580.1(2), RSMo 1949. Also it was thought that stickers or pasters would fall under the defacement and "other paper or any article" prohibition of § 111.580.3, RSMo 1949, and for that reason, too, would be unlawful. Op.Atty.Gen. No. 65, p. 3.

Those earlier statutes cited by the Attorney General have been superseded by the present voting laws compiled in Chapter 115, RSMo 1986, which do not contain the "other paper or any article" prohibition and also allow write-in votes to be written in separately from the ballot in designated areas. § 115.439.1(3), RSMo 1986. Attaching a preprinted adhesive sticker to the secrecy envelope in a space provided for write-in voting is not proscribed by any provisions of Chapter 115. Further, § 115.447.2(1) and (2), RSMo 1986, which define "defective ballot" and "rejected ballot," do not describe a ballot containing a preprinted adhesive sticker to be either defective or rejected. Instead the issue must be resolved by examination of the term "write" in the context of § 115.439.1(3) and related statutes.

Some states have permitted the use of stickers or pasters by specific statute. *E.g.*, Mass.Gen.L. ch. 54, § 65 (1978); N.J. Rev.Stat. § 19:15–28 (1964). Others have rejected the use of stickers or pasters by judicial decision. *Jackson v. Winans*, 287 Ill. 382, 122 N.E. 611 (1919); *Chappel v. Colson*, 189 Ky. 102, 224 S.W. 666 (1920). Several states have interpreted the statutory terms "write" and "write-in" to include stickers and pasters. *Pace v. Hickey*, 236 Ark. 792, 370 S.W.2d 66 (1963); *Devine v. Wonderlich*, 268 N.W.2d 620 (Iowa 1978); *Murray v. Floyd*, 216 Minn. 69, 11 N.W.2d 780 (1943), and I find these decisions helpful when examining the term "write" as used in Missouri's write-in voting statutes.[4] In *Pace*, the Arkansas Court stated that the term "write" in the statute was not to be construed in a technical sense but so long as the ballot was not misleading and expressed the will of the voter, then a sticker or paster that complied with all the other statutory requirements for write-in voting was lawful. *Pace*, 370 S.W.2d at 67.

Our statute, § 115.453(3), requires that votes marked *substantially* in accordance

---

3. Unfortunately, the parties have not presented a copy of the challenged sticker, and any other information they may have contained is not disclosed in the records before us.

4. While there is a split among the states, a number of cases have held that the intent of the voter is the paramount issue in determining

such questions; these cases include *Orewiler v. Fisher*, 133 Ohio St. 608, 15 N.E.2d 132 (1938); *Hall v. Pate*, 611 S.W.2d 577 (Tenn.1981); *Rollyson v. Summers County Court*, 113 W.Va. 167, 167 S.E. 83 (1932) and *Devine v. Wonderlich*, 268 N.W.2d 620 (Iowa 1978).

with this section and in which the intent of the voter seems clear should be counted. If a voter places a sticker that lists the name and office of the write-in candidate on the secrecy envelope, most certainly it can be said the voter has expressed his intent just as clearly as if he had written the same information. If the sticker complies with all other statutory requirements in both content and place of affixation, then I see no reason why that voter's choice should not be recorded, since his actions can hardly be described as ambiguous.[5]

For these reasons, I would reject the argument that the use of preprinted adhesive stickers was insufficient to comply with the requirements of § 115.439.1(3). This section authorizes a voter to vote for a person whose name does not appear on the ballot: "he may write the name of the person for whom he wishes to vote on the line and place a cross (X) mark in the square directly to the left of the name." Section 115.439.1(3), RSMo 1986. The emphasis of Chapter 115 is on "clear statement of intent," not rigid adherence to mechanical compliance.

While it has been argued this practice might lead to abuses and possible fraud, no evidence of intentional misconduct on the part of the candidates or the election officials is present in the case at bar, nor has it been suggested in any way that adhesive stickers were causally related to the negligent acts of the election judges when they separated some fifteen of the write-in ballots (secrecy envelopes) from the punch card ballots of the unfortunate fifteen voters.

Knipp contends that of the 217 votes counted for Nute, 88 contained no mark in the box to the left of the write-in line on the secrecy envelope, yet were improperly counted as valid.[6] To bolster his point, Knipp notes that on the secrecy envelope,

directly beneath the instructions for writing in the candidate's name, there appears in bold print the following instruction to voters: "BE SURE TO MAKE AN X IN THE SQUARE BEFORE THE PERSON'S NAME".

In short, Knipp's contention turns on whether this Court determines that a strict application of the terms of § 115.439.1(3) controls or that when deciding the efficacy of a write-in vote that fails the technical requirements of the statute but nonetheless the voter's intent is clearly expressed, § 115.453(3) should prevail. I juxtapose the statutory sections for convenient examination. Section 115.453(3) states:

> judges shall count votes marked substantially in accordance with this section when the intent of the voter seems clear.

On the other hand, § 115.439.1(3) provides that to vote for a write-in candidate the voter must write in the name of the candidate and:

> "place a cross (X) mark in the square directly to the left of the name."

This Court recently declined to decide whether § 115.453's voter intent provision takes precedence over the technical requirements of write-in voting under § 115.439.1. *Foster v. Evert*, 774 S.W.2d 472 (Mo. banc 1989). Prior decisions, although not squarely facing the issue here, have demonstrated that the voter's intent should be given every consideration, recognizing that only substantial, vis-a-vis absolute compliance with the technical requirements of the statute be met. *Kasten v. Guth*, 375 S.W.2d 110 (Mo.1964), provides an instance where this Court held that when the intent of the voter can be determined, irregularity in the writing of the candidate's name will not defeat the voter's intent.

---

5. Two voters had affixed the sticker on the secrecy envelope for a write-in vote for Nute yet had voted for Knipp on the computer ballot card. They voted twice and for different candidates. Their intent was not clear and those ballots were properly disqualified.

6. A logical extension of Appellant's argument would also question the validity of ballots where the stickers used for write-in voting would be printed with a box on the left and a preprinted "X" placed in the box. However, this case does not require that the Court consider the question not raised in this appeal.

Closer to the facts of this case is *Riefle v. Kamp*, 241 Mo.App. 1151, 247 S.W.2d 333 (1952), which held that even though the statute required a cross (X) mark in the box to the left of the name, a mere check mark or similar mark that clearly showed the voter's intent was to be counted. The court held that in determining whether a ballot should be counted that does not completely comply with the technical requirements of the statute, the court should look to: (1) the intention of the voter, (2) the secrecy of the ballot, and (3) the requirements of the statute. *Id.*, 247 S.W.2d at 337.

In the case *sub judice*, the intent of the voter is clearly evident. Each took the sticker with him into the voting booth and placed the sticker in the designated position on the secrecy envelope. To suggest that by so doing he meant to cast a vote for some other candidate is absurd unless there is other evidence indicating a contrary intent or resulting in an unacceptable ambiguity as to the voter's intent. The Arkansas Supreme Court in *Clement v. Davis*, 235 Ark. 936, 362 S.W.2d 706 (1962), held that the failure to place an "X" in the designated box would not invalidate a write-in vote where the voter had properly written in the name of the candidate, and similarly I would hold the legislative purpose is satisfied even where the voter has voted by use of a preprinted sticker.

The second consideration is the secrecy of the ballot. *Riefle v. Kamp*, 247 S.W.2d at 337. The question is whether the stickers' use in any way indicates who voted the particular ballot. *Id.* at 338. Nothing in this record suggests, nor can I perceive, that the use of a preprinted sticker in some way violates the secrecy of the ballot, hence this aspect of the *Riefle* test has been met.

The last consideration of *Riefle* is the exact requirement of the statute, in this case § 115.439.1(3). While it has been argued that an "X" must be placed in the box designated on the ballot form, it should be noted that § 115.439 does not expressly state that failure to make a cross (X) mark in the appropriate box invalidates the vote.

Instead, as noted above, the legislature has provided that those votes that are "marked substantially in accordance" with the requirements of the statute and where the intent of the voter is clear, shall be counted. § 115.453(3), RSMo 1986. By so doing the legislature has manifested a purpose to ensure that the electoral process is the best possible mirror of the popular will.

I would, therefore, hold that when a voter has complied with the statute by writing in or by placing a sticker bearing a write-in candidate's name in the designated place for such write-in candidates and the voter's intent is clear, yet fails to place the statutorily directed cross (X) mark in the box to the left of the name, such failure does not invalidate the vote.

As previously discussed, the Board petitioned the circuit court for a recount, § 115.600 RSMo 1986, alleging errors of omission or commission on the part of the election authorities. If there remained some dispute requiring the ballots to again be counted this Court could remand with directions that a recount be conducted. However, there is no unresolved question of numbers. The parties agree on the number of ballots, and a tie vote has been determined to exist. The logical concomitant of the authority conferred by § 115.600 (when, as here, the "recount" has been completed in the trial court) permits that this Court affirm the trial court's order for a new election.

That such authority is contemplated becomes readily apparent when § 115.600 is read in harmony with related sections of Chapter 115. Sections 115.447 through 115.525 pertain to and are found under the caption "Counting of Votes". Section 115.517.3, contained therein, mandates that:

> If two or more persons receive an equal number of votes ... for ... election to ... office ... the officer with whom such candidates filed their declarations of candidacy shall ... issue a proclamation ... ordering a special election to determine which candidate is elected to the office ... In this proclamation the officer shall specify the name of each

candidate for the office to be voted on at the [special] election ...

Most certainly, one can only conclude that when a tie vote has been found to exist after a *recount in the circuit court* under § 115.600, the circuit judge similarly is empowered to order a new special election, submitting the two candidates who have tied, for the voters' consideration.

If any doubt remains as to such authority under § 115.600, it dissolves in light of other applicable sections relating to "election contests."

Sections 115.526 through 115.601 relate to and are grouped under the caption "Election Contests." Here, Knipp, as candidate for the office of councilman, was authorized to challenge, as he did in his counterclaim, the "correctness of the returns for the office charging that irregularities occurred in the election." Such action was properly heard and determined by the circuit court of St. Louis County, the county in which the City of Ferguson is located and in which "the alleged irregularities occurred." § 115.575.2, RSMo 1986. Knipp's challenge went to the validity of the write-in ballots cast by use of "stickers" and of write-in ballots that were counted though "in violation of the statute for failing to provide a cross (X) mark in the square directly to the left of the name."

The court on a prima facie showing of irregularity that placed the result in doubt was required to order a recount of "all votes brought in question by the petition or its answer." § 115.583, RSMo 1986. Further, when the court:

> "trying the contested election determine[d] there were irregularities of sufficient magnitude to cast doubt on the validity of the initial election, it [was authorized to] order a new election for the contested office ..." § 115.593, RSMo 1986.

A reading of the several referenced sections reveals a harmonious and natural progression in the legislative scheme which permits the proceedings brought and the result obtained in the circuit court.

I would affirm the judgment of the court and remand the cause with directions that a new election for the office of Councilman, Ward 3 of the City of Ferguson, be conducted as soon as possible hereafter under the terms set forth in the judgment.

GEORGE M. FLANIGAN, Special Judge, dissenting.

I respectfully dissent. I concur fully with Judge Rendlen's dissenting opinion except for that portion which deals with whether the use of stickers or pasters is permissible. The majority opinion has not addressed that issue and I refrain from expressing an opinion on it.