

# Missouri Court of Appeals
## Southern District
### Division Two

CAROL HINESLY, Dunklin County Clerk, )
)
)
Plaintiff/Appellant/Respondent, )
)
vs. )    Nos. SD32467, SD32495,
)    and SD32586
TOM TODD and KENT HAMPTON, )    (Consolidated)
)
Defendants/Respondents/ )    Filed April 28, 2014
Cross-Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF DUNKLIN COUNTY

Honorable William H. Winchester III, Associate Circuit Judge

### APPEAL NO. SD32495 DISMISSED; APPEAL NOS. SD32467 & SD32586 REVERSED AND REMANDED WITH INSTRUCTIONS

These cross-appeals challenge the trial court's judgment ordering a special election in three of the voting precincts of the 150th legislative district for the position of state representative.  The trial court's order was based upon a finding of voting irregularities in those precincts that occurred in the November 6, 2012 general election, which were significant enough to cast doubt on the election's outcome.  Because this Court finds that the statutory authority to consider and grant relief in this election contest is vested solely in the Missouri House of Representatives and the trial court lacked

statutory authority to consider this matter or grant any relief, we reverse and remand with instructions to dismiss the petition.

**Factual and Procedural Background**

Based upon total votes cast in the November 6, 2012 general election, Kent Hampton defeated rival Tom Todd for the office of state representative in the 150th legislative district of Missouri. Hampton's margin of victory, however, was narrow—only 116 votes—and was called into question shortly after the election.

Carol Hinesly, the County Clerk for Dunklin County and an election official within the 150th District, performed a canvass of the election results. She concluded that several voters from the 152nd district were given ballots for the 150th district and vice versa. Initially, Hinesly's identification of discrepancies was confined to the Campbell Ward 2 and Campbell Rural precincts.

Campbell Ward 2 Precinct is in the 150th legislative district. Campbell Rural Precinct lies partly in the 150th legislative district and partly in the 152nd legislative district. Both precincts use the same polling place. On election day, 253 voters from Campbell Ward 2 Precinct signed the election roster; however, 316 ballots were cast in the district's election. Likewise, in the portion of Campbell Rural Precinct that is located in the 150th legislative district, there were 119 registered voters who voted that day; yet, there were 327 ballots cast in the district's election.

Thus, these discrepancies revealed that in addition to the ballots cast by registered voters in the district, 63 extra ballots were cast in Campbell Ward 2 Precinct and 208 extra ballots were cast in Campbell Rural Precinct. Therefore, in an election where the margin of victory was 116 votes, at least 271 extra ballots had been cast.

Purporting to act under section 115.600,[1] Hinesly filed a petition in the trial court, which named Hampton and Todd as defendants. Hampton filed a motion to dismiss on the basis that the trial court lacked subject matter jurisdiction to hear Hinesly's petition, which the trial court denied. Hinesly's first amended petition alleged in pertinent part:

> [Hinesly] is convinced that sufficient errors of omission or commission . . . have occurred in the conduct of the November 6, 2012, General Election to elect the Representative for the 150th Missouri State Representative District and that a new election is required to rectify said errors and to determine the properly elected Representative.

Following a bench trial on the first amended petition, the trial court issued its judgment finding that there were voting irregularities during the November 6, 2012 election for state representative of the 150th legislative district. It further found the irregularities were of "sufficient magnitude" to cast doubt on the result of the election. Ultimately, the trial court ordered a new election in Campbell Ward 2 Precinct and in Campbell Rural Precinct.

A few days later, Hinesly filed a motion for rehearing based on newly discovered evidence. In the motion, Hinesly alleged that she had discovered five voters in the Cotton Hill Rural Precinct who had voted in the wrong district. The trial court set aside its previous judgment and scheduled a new hearing. After that hearing, the trial court entered a new judgment that was substantially the same as the previous judgment except that it included the Cotton Hill Rural Precinct in the order for a new election.

The parties have cross-appealed the judgment. *See* Rules 81.04(c) and 84.04(i).[2] Hampton's appeal was assigned number SD32467, Todd's was assigned number SD32495, and Hinesly's was assigned number SD32586.

---

[1] All statutory references are to RSMo 2000, unless otherwise indicated.
[2] References to rules are to Missouri Court Rules (2013).

3

**<u>Standard of Review</u>**

As this was a court-tried matter, "the decision of the trial court must be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law." *Marre v. Reed*, 775 S.W.2d 951, 952 (Mo. banc 1989). This Court gives the trial court deference regarding factual findings but reviews legal determinations *de novo*. *See Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012).

**<u>Discussion</u>**

Todd has failed to file a brief in support of his appeal, as mandated by Rule 84.05(a), or otherwise join in any other party's brief. Todd, therefore, has abandoned his appeal, No. SD32495, and it is dismissed. *See Cowden v. Sun Oil Co. of Pennsylvania*, 583 S.W.2d 547, 549 (Mo.App. 1979). We now turn to consideration of Hinesly's and Hampton's appeals.

We limit our discussion to the dispositive issue.[3] In his first point, Hampton contends that the trial court had no authority[4] to hear Hinesly's petition, let alone grant

---

[3] In addition to the point that we address in our discussion, Hampton claims in other points that the trial court's order of a new election was unsupported by substantial evidence and based upon an erroneous application of the law, and that the trial court improperly admitted certain evidence offered by Hinesly. In her cross-appeal, Hinesly argues that the trial court's judgment was erroneous because "an election conducted in only three precincts out of a district composed of more than thirty precincts is not a new election[.]" We do not reach these points because "[i]ssues that are not essential to a disposition of the case should not be addressed." *S & P Props., Inc. v. Daly,* 330 S.W.3d 128, 130 (Mo.App. 2010) (quoting *O'Hare v. Permenter,* 113 S.W.3d 287, 289 (Mo.App. 2003)) (internal quotations omitted).

[4] Rather than "authority," Hampton's point on appeal uses the word "jurisdiction." Indeed, a review of election contest jurisprudence reveals that the procedures and remedies provided by sections 115.526-115.601 have been described in jurisdictional terms. *See, e.g.*, *Hockemeier v. Berra*, 641 S.W.2d 67, 68 (Mo. banc 1982); *Landwersiek v. Dunivan*, 147 S.W.3d 141, 149 (Mo.App. 2004); *State ex rel. Holland v. Moran*, 865 S.W.2d 827, 830 (Mo.App. 1993); *see also* section 115.529 ("Circuit courts shall have jurisdiction to hear and determine all primary election contests."). However, as clarified by our supreme court in *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009), a circuit court's subject matter jurisdiction is controlled by article V, section 14 of the Missouri Constitution and not by statute. "When a statute speaks in jurisdictional terms or can be read in such terms, it is proper to read it as merely setting statutory limits on remedies or elements of claims for relief that courts may grant." *J.C.W.*, 275 S.W.3d at 255. "Simply stated, a claim that a trial court has exceeded its statutory power or authority does

---

relief in the form of a new election of any type. Section 115.563.1, Hampton argues, vests exclusive authority "over election contests regarding a house seat with the house of representatives and not with the judicial branch." We agree.[5]

Section 115.563.1 provides, in pertinent part, that "[a]ll contested elections for the office of state representative shall be heard and determined by the state house of representatives."[6] Hinesly acknowledges that section 115.563.1 applies to "contested elections"; however, she claims that an election authority does not "contest" an election by seeking relief under section 115.600. That statute, under which Hinesly filed her petition in circuit court, provides, *in toto*:

> The election authority, if convinced that errors of omission or commission have occurred on the part of the election authority, election judges, or any election personnel in the conduct of an election, may petition the circuit court for a recount or a new election and the court is authorized to order a new election if the evidence provided demonstrates that the irregularities were sufficient to cast doubt on the outcome of the election.

Section 115.600. According to Hinesly, section 115.600, unlike an election contest, "relates to the integrity of the election process itself, not the counting of votes or the qualifications of any candidate." We, however, fail to see or draw that distinction.

"An election contest properly encompasses those issues which affect the *conduct and outcome* of an election." ***Beatty v. Metro. St. Louis Sewer Dist.***, 700 S.W.2d 831, 838 (Mo. banc 1985) (emphasis added) (finding that "[t]he wording of the proposition on

---

not implicate the trial court's subject matter jurisdiction." ***State v. Brown***, 406 S.W.3d 460, 464 (Mo.App. 2013).

[5] Hampton also argues that the trial court lacked authority over this matter pursuant to article III, section 18 of the Missouri Constitution. Implicit within Hampton's argument is the contention that section 115.600 was unconstitutional as applied by the trial court. "However, the courts should refrain from deciding constitutional issues when the case can be resolved without reaching those issues." ***Jackson Cnty. Bd. Of Election Comm'rs v. Paluka***, 13 S.W.3d 684, 689 (Mo.App. 2000). Because we resolve this point in Hampton's favor on the basis of statutory interpretation, we elect not to address the constitutional arguments of his point relied on.

[6] Section 115.563.1 also applies in a similar fashion to all contested elections for the office of state senator.

a ballot and the propriety of the notice of election provided are issues cognizable only in an election contest"); *see also* **Wright-Jones v. Johnson**, 256 S.W.3d 177, 180 (Mo.App. 2008) ("Sections 115.526 to 115.601 govern election contests ('election contest statutes')."). In any event, our supreme court in **Bd. of Election Comm'rs of St. Louis Cnty. v. Knipp**, 784 S.W.2d 797, 797-99 (Mo. banc 1990), characterized an action brought by a local election authority alleging election irregularities under section 115.600, RSMo 1986, as an "election contest" and employed principles of law relating to election contests in its analysis. Accordingly, we conclude that by filing a petition under section 115.600, Hinesly has contested an election.

This being an election contest, we note that "[t]he right to contest an election exists by virtue of statute; it is not a common law or equitable right." **Knipp**, 784 S.W.2d at 798. Likewise, the authority of the circuit court is "confined strictly to statutory provisions governing election contests and the letter of the law is the limit of its power." **State ex rel. Bushmeyer v. Cahill**, 575 S.W.2d 229, 232 (Mo.App. 1978); *see also* **Foster v. Evert**, 751 S.W.2d 42, 44 (Mo. banc 1988) ("[E]lection contest statutes are a code unto themselves. The procedures there established are 'exclusive and must be strictly followed as substantive law.'" (quoting **Hockemeier v. Berra**, 641 S.W.2d 67, 69 (Mo. banc 1982))).

Hinesly is correct that section 115.600 by its terms generally establishes a procedure by which an election authority, in the event of election irregularities, may contest an election in circuit court. *See* section 115.600. The specific contest in this case, however, involves a seat in the house of representatives. Contrary to the general plenary provisions of section 115.600, section 115.563.1 specifically provides that "[a]ll

6

contested elections for the office of state representative *shall be heard and determined by the state house of representatives*." Section 115.563.1 (emphasis added); *see also* section 115.575.2, RSMo Supp. 2003 ("All contested elections on any office or question *other than those provided for in sections 115.555, 115.563 and subsection 1of this section* shall be heard and determined by the circuit court of any circuit, selected by the contestant, in which all or any part of the election was held and in which any alleged irregularity occurred." (emphasis added)).[7]

"It is axiomatic that where two statutes address the same subject matter and there is a necessary repugnance, the specific controls over the general." ***Knight v. Carnahan***, 282 S.W.3d 9, 20 (Mo.App. 2009). Here, construing section 115.600 as permitting Hinesly to contest in circuit court an election for a seat in the house of representatives creates a "necessary repugnance" with section 115.563.1 in which the legislature provided that such contests "shall be heard and determined by the state house of representatives." Consequently, to the extent that these two statutes conflict, section 115.563.1, which specifically applies to elections for the office of state representative, must control.

Therefore, because the specific provisions of section 115.563.1 supersede and control over the general provisions of section 115.600 in a contest such as this where a seat in the house of representatives is at issue, section 115.563.1 operates as a statutory

---

[7] Section 115.555 pertains to the contested elections that the supreme court shall hear and determine. Section 115.575.1, RSMo Supp. 2003, provides that all contested elections for the office of circuit or associate circuit judge not subject to the provisions of article V, section 25 of the Missouri Constitution shall be heard and determined by an adjoining circuit court selected by the contestant.

bar on the trial court's authority to grant any relief on Hinesly's petition.[8]  Hampton's first point is granted.

## Decision

The decision of the trial court is reversed, and the cause is remanded to the trial court with instructions to dismiss the petition with prejudice.

GARY W. LYNCH, J. - Opinion author

JEFFREY W. BATES, P.J. - concurs

WILLIAM W. FRANCIS, C.J. - concurs

---

[8] Hinesly points out that section 115.565, entitled "Contests for house or senate seats, where and how filed," provides a procedure for "any candidate" to contest an election for an office provided in section 115.563.1, but no provision exists for election authorities.  Section 115.563.1, however, does not limit itself to contests brought by candidates; rather, it applies to "[a]ll contested elections[.]"  Because the trial court's statutory authority over this action is the only issue before us, we express no opinion as to what limits, if any, the election contest statutes place on either the house or the senate in considering an election contest under section 115.563.1.